HALL, Chief Judge.
Defendant, Johnny B. Wright, was charged by indictment with aggravated rape in violation of LSA-R.S. 14:42 and aggravated burglary in violation of LSA-R.S. 14:60. Defendant was tried and found guilty as charged on both counts. He was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence on the aggravated rape charge and to 30 years at hard labor on the aggravated burglary charge, the sentences running consecutively. Defendant appealed contending that (1) the trial court erred when it denied defendant’s motion for judgment of acquittal in accordance with LSA-C.Cr.P. Art. 821; and (2) the evidence, viewed in the light most favorable to the state, was insufficient to convince a reasonable fact finder that defendant was guilty beyond a reasonable doubt.[1] Finding his contentions meritless, we affirm.
On June 14, 1986, around 1:00 a.m., the victim was awakened when an intruder put his hand over her mouth and held a knife to her throat. Her three children awakened when she struggled and cried out. One of the children turned on a light in their bedroom which partially illuminated the mother’s bedroom. The intruder threatened the victim and demanded that she tell her children to be quiet and to turn out the light. He overpowered her and took her through the children’s bedroom into the living room where he vaginally raped her. He penetrated her with his penis but withdrew prior to ejaculation. He ejaculated onto a pillowslip that the victim had on the loveseat in the living room. He took the pillowslip with him when he left the house.
Defendant’s assignments of error concern the sufficiency of the evidence. He relies on his own testimony and that of an alibi witness that he was elsewhere at the time the victim was attacked. He argues that the victim identified him because of her close friendship with one of the state’s witnesses, Georgia Lee, who held a grudge against the defendant. He further argues that the children’s identification of him as the attacker is unreliable and that the medical and scientific evidence was insufficient to establish penetration or that he was the person who assaulted the victim.
LSA-C.Cr.P. Art. 821 tracts Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) in setting up a Louisiana standard pertaining to post-verdict motions for acquittal based upon insufficiency of the evidence. In order to satisfy due process standards, the record evidence, viewed in the light most favorable to the prosecution, must be sufficient for a rational fact finder to conclude that the essential elements of the crime were proven beyond a reasonable doubt. Jackson v. Virginia, supra.
LSA-R.S. 14:41 provides in part:
A. Rape is the act of anal or vaginal sexual intercourse with a male or female person who is not the spouse of the offender, committed without the person’s lawful consent.
B. Emission is not necessary and any sexual penetration, vaginal or anal, however slight is sufficient to complete the crime....
LSA-R.S. 14:42 provides in part:
A. Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
*770 (1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon....
LSA-R.S. 14:60 provides in part:
Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender,
(1) Is armed with a dangerous weapon; or
(2) After entering arms himself with a dangerous weapon; or
(3) Commits a battery upon any person while in such place, or in entering or leaving such place....
The victim testified that on June 14,1986 she resided at 2935 Willie Mays Street in Caddo Parish. She went to bed between 11:30 and 12:00 p.m. At approximately 1:00 a.m. she was awakened by someone with his hand across her mouth, and she felt something cold on her throat. The assailant told her not to say anything or he would kill heir. She struggled and yelled for her son. One of the children turned the light on in their bedroom, and it illuminated her bedroom. Her son ran into her bedroom. The assailant demanded that she tell the children to turn off the light and to be quiet, which she did. He pulled her from the bed with a knife at her throat and went through the children’s bedroom into the living room. The man constantly cursed at the children, and he said he was going to kill them. He forced the victim to the floor and penetrated her with his penis. The assailant did not ejaculate inside of her but ejaculated onto a pillowslip which was on the arm of a chair in the living room. He took the pillowslip with him when he left. The victim was wearing a black slip that she washed the day before. She looked at the clock when everything was over, and it was between 1:20 and 1:25 a.m. She took her children to a neighbor's house where she called the police.
The victim identified defendant as her assailant. There was enough light from the children's bedroom for her to determine who her attacker was. He was wearing a black t-shirt with designs on it. She noticed defendant pass her house several times on the day prior to the attack. Georgia Lee, a friend of the victim, told her that the man was Johnny B. Wright. She later noticed defendant lying on the street. She thought defendant was hurt but he walked away. She did not speak to defendant. The victim did not know defendant prior to the attack, and she did not give him permission to enter her house.
Defendant’s son, who was 13 years old at the time of the attack, stated that on the night of the attack he was awakened by his sisters. He went to the door of his mother’s bedroom and recognized the defendant on top of his mother. He knew defendant because he had seen him around the neighborhood previously.
One of the victim’s daughters, who was 12 years old at the time of the attack, also identified defendant as her mother’s assailant. Her mother’s crying awakened her. She turned on the light and saw the defendant with a knife and screwdriver at her mother’s neck. The defendant was wearing a black shirt and blue jeans.
The victim’s other daughter, who was eight years old at the time of the attack, stated that on the night of the attack her mother’s crying awakened her. She saw a man wearing a black shirt with red on it. The man brought her mother through her bedroom and raped her on the couch. She initially picked defendant out of a photographic lineup but was not positive.
Georgia Ann Lee testified that on the day before the victim was attacked she saw defendant near the victim’s residence wearing a black t-shirt with a glitter design on it. Defendant passed by the house approximately eight to ten times that day. Lee previously had an argument with defendant concerning her grandchild.
*771 Johnnie Allen and Caroline Brooks visited the victim at approximately 11:00 p.m. on the night prior to the attack. Allen stated that they saw someone lying on the street wearing dark pants and a dark shirt with glitter on it.
Dr. Dawn Knight examined the victim and prepared a rape kit at Louisiana State University Medical Center. Dr. Knight did not find any signs of injury. She did not find any spermatozoa or seminal acid phosphatase. Her findings were inconclusive as to whether the victim had sexual intercourse prior to her examination.
Corporal Alice Mitchell of the Shreveport Police Department interviewed the victim at approximately 2:15 a.m. She found her very upset. The victim told the officer that the assailant was armed with a knife and a screwdriver, and she thought that he entered the residence through a kitchen window. She told the officer that she was familiar with the assailant because she had seen him around the area earlier that day.
Detective A.J. Price of the Shreveport Police Department interviewed the victim and her children at approximately 2:30 a.m. He determined that the intruder entered the house utilizing the kitchen window. He found debris on the ground outside the window consistent with that found in the kitchen sink. A screwdriver with a clear plastic handle was found on the loveseat.
Sergeant Jim Derrick of the Shreveport Police Department checked the victim’s residence for fingerprints but could not find any. He explained that the surfaces were not desirable for lifting prints.
Pamela Smart, who works at the North Louisiana Crime Lab under the direction of Pat Wojtkiewicz, examined the rape kit and analyzed the gown which the victim was wearing on the night of the attack. She found seminal acid phosphatase on the garment. A type O secretor, the same as the defendant, deposited the enzyme on the garment. She did not detect any spermatozoa or seminal acid phosphatase in the vaginal samples. She did not find any foreign pubic hairs or any skin under the victim’s fingernails.
Defendant, Rodney Smith, and Essie Daniels testified on defendant’s behalf.
Rodney Smith, who had a previous conviction of armed robbery, testified that he was with the defendant on the night the attack occurred. He stated that they walked to the store and purchased some liquor. They returned to Essie Daniels’ house at 3008 Anderson Street. He left defendant there around 10:00 p.m.
Essie Daniels testified that defendant was at her house between the hours of 10:00 p.m. and 2:00 a.m. on the date the attack occurred. She stated that she awakened around 10:00 p.m., and the defendant was on her couch. She talked to him for a few minutes and went back to sleep. She awakened shortly before 2:00 a.m., and defendant was still on the couch.
Defendant testified that he had been living in Dallas, Texas since February 1986. On June 1, 1986 he returned to Shreveport to see his sick father. On the date prior to the attack he went to his mother’s house. She asked him to unstop the sewer. He went to his aunt’s house at 2767 Martin Luther King Drive to borrow his uncle’s cable. After unstopping the sewer he returned the cable to his uncle. He passed by the victim’s residence several times since he used a trail near her residence as a short-cut. Georgia Lee spoke to him, and he was surprised. He knew the victim by sight but not by name. Defendant felt that the victim had something against him because she talked to Lee.
Defendant stated that the victim confronted him on the date prior to her attack. The victim asked him what he was doing. She told him that Georgia Lee said he was a rapist, a murderer, and a burglar. Defendant did not own a black shirt with glitter on it. Defendant stated that it was a 15 minute walk from Anderson Street to Willie Mays Street.
Defendant further testified that on the morning after the rape he went to a school on Gilliam Street. Someone told him he was accused of raping a one-legged woman. He and Daniels read the newspaper but did not find his name mentioned. Defendant left for Dallas the next day.
*772 On rebuttal, Detective A.J. Price testified that while investigating the crime he asked Essie Daniels seven times whether she could provide an alibi for defendant. She could not provide one. He stated that it was only a five to seven minute walk from the victim’s residence to the Daniels’ residence.
Viewing the evidence in the light most favorable to the prosecution, we find that there was sufficient evidence to support defendant’s convictions. The victim testified that she did not know defendant, and she did not authorize his entry into her home. The victim and at least two of her children positively identified defendant as the perpetrator. Defendant was armed with a knife and a screwdriver. Although no semen or spermatozoa was found in the victim, she testified that defendant penetrated her vagina but pulled out prior to ejaculation. Tests performed on the stain found on the victim’s gown were consistent with defendant being the perpetrator.
Defendant’s witnesses did not account for defendant’s whereabouts at the time of the attack. Smith stated that he was with defendant until 10:00 p.m. Daniels stated that defendant was on her couch at 10:00 p.m. She went to sleep and awakened shortly before 2:00 a.m., and found defendant on her couch. Since the walking time between the victim’s house and the Daniels’ house was no more than seven minutes, defendant could have walked to the victim’s home, committed the rape, and returned to the Daniels’ house before Daniels awakened. Further, the jury was entitled to reject the alibi testimony of Daniels and the defendant as not credible.
Defendant’s assignments of error lack merit, and his convictions and sentences are affirmed.
AFFIRMED.

. Defendant originally assigned 15 errors. He only briefed two assignments of error, and the others are considered abandoned,